## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| SHRINE WILLIAMS and ASHLEY DAVIS, each individually and on behalf of all others similarly situated, | **Case No. 1:22-cv-21023-KMM**<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action |
| v. | Judge K. Michael Moore |
| SITEL GROUP and SYKES ENTERPRISES INCORPORATED | |
| | **Jury Trial Demanded** |

### PLAINTIFFS' FIRST AMENDED
### CLASS AND COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1.     Like many other companies across the United States, Sitel's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2.     That hack led to problems in timekeeping and payroll throughout Sitel's organization.

3.     As a result, Sitel's workers who were not exempt from the overtime requirements under federal and state law, were not paid for all hours worked and/or were not paid their proper overtime premium on time, if at all, after the onset of the Kronos hack.

4.     Shrine Williams and Ashley Davis are two (2) such Sitel workers.

5.     Sitel could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6.     Sitel pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

7.     Sitel made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8.     After significant delay, Sitel made payment of some of these outstanding wages. However, portions of these earned wages remain unpaid.

9.     Sitel's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage Act (PMWA), 43 Pa. Stat. Ann. § 333.101 *et seq.*, and the Pennsylvania Wage Payment and Collection Law (WPCL), 43 Pa. Stat. Ann. § 260.1 *et seq.*

10.     Williams and Davis bring this lawsuit to recover these unpaid overtime wages and other damages owed by Sitel to themselves and the non-overtime-exempt workers like them, who were the ultimate victims of not just the Kronos hack, but also Sitel's decision to make its front line workers bear the economic burden for the hack.

11.     This action seeks to recover the unpaid wages and other damages owed by Sitel to all these workers, along with the penalties, interest, and other remedies provided by federal and Pennsylvania law.

### JURISDICTION & VENUE

12.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13.     The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Sitel is headquartered in this District.

PARTIES

15.     **Plaintiff Shrine Williams** is a natural person.

16.     Williams has been, at all relevant times, an employee of Sitel.

17.     Williams has worked for Sitel since September 2021.

18.     During and since December 2021, Williams performed work for Sitel in Pennsylvania.

19.     **Plaintiff Ashley Davis** is a natural person.

20.     Davis was, at all relevant times, an employee of Sitel.

21.     Davis worked for Sitel from July 2021 to February 2022.

22.     Williams and Davis represent at least two (2) groups of similarly situated Sitel workers.

23.     Williams and Davis represent a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Sitel, including its subsidiaries and alter egos such as Sykes (and its subsidiaries and alter egos), who worked for Sitel in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

24.     Williams represents a class of similarly situated workers under Pennsylvania law pursuant to Federal Rule of Civil Procedure 23. This "Pennsylvania Class" is defined as:

> **All current or former non-exempt employees of Sitel, including its subsidiaries and alter egos such as Sykes (and its subsidiaries and alter egos), who worked for Sitel in Pennsylvania at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

25.     Together, throughout this Complaint, the FLSA Collective members and Pennsylvania Class Members are referred to as the "Similarly Situated Workers."

26.     **Defendant Sitel Group** maintains its headquarters and principal place of business in this District.

27.     Sitel has been served with service of process.

28.     **Defendant Sykes Enterprises Incorporated f/k/a Sykes Enterprises, Inc. ("Sykes")** is a Florida corporation.

29.     Sykes maintains its headquarters and principal place of business in Florida.

30.     Sykes has been served with service of process.

31.     At all relevant times, Sitel exerted operational control over its subsidiaries and alter egos.

32.     At all relevant times, Sitel substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

33.     At all relevant times, Sitel had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

34.     Sitel's subsidiaries and alter egos include Sykes.

35.     Sitel employed and/or jointly employed, with its subsidiaries and alter egos, Williams and the Similarly Situated Workers.

36.     Sitel and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

37.     Sitel and its subsidiaries and alter egos are joint employers for purposes of Pennsylvania law.

38.     Throughout this Complaint, Sitel, Sykes, and their subsidiaries and alter egos are referred to jointly as "Sitel."

39.     At all relevant times, Sykes exerted operational control over its subsidiaries and alter egos.

40.     At all relevant times, Sykes substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

41.     At all relevant times, Sykes had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

42.     Sykes' subsidiaries and alter egos include Clearlink, Assistance Services Group, Sykes Digital Servcies, XSell Technologies, and Portent.

43.     Sykes employed and/or jointly employed, with its subsidiaries and alter egos, Williams, Davis, and the Similarly Situated Workers.

44.     Sykes and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

45.     Sykes and its subsidiaries and alter egos are joint employers for purposes of Pennsylvania law.

46.     Throughout this Complaint, Sykes and its subsidiaries and alter egos are referred to jointly as "Sykes."

### COVERAGE UNDER THE FLSA

47.     At all relevant times, Sitel Group was an employer of Williams and Davis within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

48.     At all relevant times, Sitel Group was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

49.     At all relevant times, Sitel Group has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

50.     During at least the last three (3) years, Sitel Group has had gross annual sales in excess of $500,000.

51.     During at least the last three (3) years, Sitel Group was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

52.     Sitel Group employs many workers, including Williams, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

53.     The goods and materials handled, sold, or otherwise worked on by Williams, and other Sitel Group employees and that have been moved in interstate commerce include, but are not limited to, office and telecommunication equipment.

54.     At all relevant times, Sykes was an employer of Williams and Davis within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

55.     At all relevant times, Sykes was an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

56.     At all relevant times, Sykes has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

57.     During at least the last three years, Sykes has had gross annual sales in excess of $500,000.

58.     During at least the last three (3) years, Sykes was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

59.     Sykes employs many workers, including Williams and Davis, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

60.     The goods and materials handled, sold, or otherwise worked on by Williams, Davis, and other Sykes employees and that have been moved in interstate commerce include, but are not limited to, office and telecommunication equipment.

**FACTS**

61.     Sitel provides customer engagement services to other businesses. *See* Sitel Group, Our Mission, https://www.sitel.com/about/our-mission/ (last visited Apr. 3, 2022).

62.     Sitel calls its customer engagement ineractions "customer experience (CX)." *See* Sitel Group, Our Mission, https://www.sitel.com/about/our-mission/ (last visited Apr. 3, 2022).

63.     Sitel delivers eight (8) million customer experiences, or brand experiences, ever day. *See* Sitel Group, Our Mission, https://www.sitel.com/about/our-mission/ (last visited Apr. 3, 2022).

64.     To deliver these services, Sitel employs around, or more than, 160,000 employees. *See* Sitel Group, Our Mission, https://www.sitel.com/about/our-mission/ (last visited Apr. 3, 2022).

65.     Some of Sitel's employees work through Sykes.

66.     Sykes was acquired by Sitel in June 2021. Press Release, Sykes, Sykes Enterprise, Inc. to be Acquired by Sitel Group [sic] (Jun. 18, 2021) https://www.sykes.com/company/news/sykes-enterprise-inc-to-be-acquired-by-sitel-group/.

67.     Sitel's estimated 160,000, or more, employees include those working through Sykes and its subsidiaries and alter egos. *See* Sitel Group, Our Mission, https://www.sitel.com/about/our-mission/ (last visited Apr. 3, 2022); Sykes, Sykes Enterprise, Inc. to be Acquired by Sitel Group [sic] (Jun. 18, 2021) https://www.sykes.com/company/news/sykes-enterprise-inc-to-be-acquired-by-sitel-group/.

68.     Many of Sitel's employees are paid by the non-overitme-exempt hourly and salaried workers.

69.     Since at least 2021, Sitel has used timekeeping software and hardware operated and maintained by Kronos.

70.     On or about December 11, 2021, Kronos was hacked with ransomware.

71.     The Kronos interfered with its clients, including Sitel's, ability to use Kronos's software and hardware to track hours and pay employees.

72.     For at least a portion of time following the Kronos hack, Sitel failed to keep accurate track of the hours that Williams, Davis, and Similarly Situated Workers worked.

73.     Instead, Sitel used various methods to estimate the number of hours Williams, Davis, and Similarly Situated Workers work in each pay period.

74.     For example, Sitel issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

75.     As a result of Sitel's failure to accurately track the actual hours worked each week, employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

76.     Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

77.     Williams and Davis are two (2) of the many Sitel employees affected by these pay and timekeeping practices .

78.     Instead of paying Williams and Davis for the hours they actually worked (including overtime hours), Sitel simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Williams and Davis's actual hours worked and regular pay rates, in multiple workweeks.

79.     In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

80.     Sitel knows they have to pay proper overtime premiums to non-exempt hourly and salaried employees.

81.     Sitel knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

82.     Sitel knows it has to pay the wages it agreed to pay its employees.

83.     Sitel knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at the rates it agreed to pay them.

84. Sitel could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

85. Instead of accurately tracking hours and paying employees wages and overtime, Sitel decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

86. It was feasible for Sitel to have its employees and managers report accurate hours so its employees could be timely paid for the work they did for the company.

87. But Sitel chose not to do that.

88. In other words, Sitel pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure that it kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

89. Williams is one (1) of Sitel's employees who had to shoulder the burden of this decision by Sitel.

90. Williams was and is a non-exempt hourly employee of Sitel.

91. Williams regularly works over forty (40) hours per week for Sitel.

92. Williams's normal, pre-Kronos hack hours are reflected in Sitel's records.

93. Williams had a contractual agreement with Sitel to pay her for all hours worked.

94. Williams's contractual agreement with Sitel required her to be paid for all hours worked at an amount equal to her regular rate for hours up to forty (40) in a workweek, and at an overtime premium of no less than 1.5 times her regular rate of pay for hours over forty (40) in a workweek.

95.     Since the Kronos hack, Sitel has not paid Williams on time, if at all, for her actual hours worked each week.

96.     Since the hack took place, Sitel has not accurately recorded all hours worked by Williams and its other workers.

97.     Since the Kronos hack, Sitel has not paid Williams and its other workers pursuant to its contractual agreement with them.

98.     Even though Sitel has had Williams record and submit her hours, Sitel has not issued proper and timely payment for all hours worked.

99.     Davis was a non-exempt hourly employee of Sitel.

100.    Davis regularly worked over forty (40) hours per week for Sitel.

101.    Davis's normal, pre-Kronos hack hours are reflected in Sitel's records.

102.    Since the Kronos hack, Sitel has not paid Davis on time, if at all, for her actual hours worked each week.

103.    Since the hack took place, Sitel has not been accurately recording the hours worked by Davis and its other workers.

104.    Sitel was aware of the overtime requirements of the FLSA.

105.    Sitel nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Williams and Davis.

106.    Sitel's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

107.    The full overtime wages owed to Williams, Davis, and the Similarly Situated Workers became "unpaid" when the work for Sitel was done—that is, on Williams, Davis, and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed.

Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

108.    At the time Sitel failed to pay Williams, Davis, and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Sitel became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal and state law.

109.    In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

110.    Any payment made by Sitel to Williams, Davis or the Similarly Situated Workers that Sitel may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

111.    The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

112.    Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Sitel's acts and omissions resulting in the unpaid wages in the first place.

113.    Williams, Davis, and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Sitel under applicable law.

### COLLECTIVE ACTION ALLEGATIONS

114.  Williams and Davis incorporate all other allegations.

115.  Numerous individuals were victimized by Sitel's patterns, practices, and policies, which are in willful violation of the FLSA.

116.  Based on their experiences and tenure with Sitel, Williams and Davis are aware that Sitel's illegal practices were imposed on the FLSA Collective.

117.  The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

118.  These employees are victims of Sitel's unlawful compensation practices and are similarly situated to Williams and Davis in terms of the pay provisions and employment practices at issue in this lawsuit.

119.  The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

120.  Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

121.  Sitel's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

122.  The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CLASS ACTION ALLEGATIONS

123.  Williams and Davis incorporate all other allegations.

124.  The illegal practices Sitel imposed on Williams were likewise imposed on the Pennsylvania Class members.

125.    Numerous other individuals who worked for Sitel were were not properly compensated for all hours worked, as required by Pennsylvania law.

126.    The Pennsylvania Class is so numerous that joinder of all members of the class is impracticable.

127.    Sitel imposed uniform practices and policies on Williams and the Pennsylvania Class members regardless of any individualized factors.

128.    Based on her experience and tenure with Sitel, as well as coverage of the Kronos hack, Williams is aware that Sitel's illegal practices were imposed on the Pennsylvania Class members.

129.    Pennsylvania Class members were all not paid their proper overtime on time, if at all, when they worked in excess of forty (40) hours per week.

130.    Pennsylvania Class members were all not paid their contractually agreed wages.

131.    Sitel's failure to pay wages and overtime compensation in accordance with Pennsylvania law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Pennsylvania Class Members.

132.    Sitel's failure to pay contractually agreed wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Pennsylvania Class Members.

133.    Williams's experiences are therefore typical of the experiences of the Pennsylvania Class members.

134. Williams has no interest contrary to, or in conflict with, the members of the Pennsylvania Class. Like each member of the proposed class, Williams has an interest in obtaining the unpaid wages and other damages owed under the law.

135. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

136. Absent this action, many Pennsylvania Class members likely will not obtain redress of their injuries and Sitel will reap the unjust benefits of violating Pennsylvania law.

137. Furthermore, even if some of the Pennsylvania Class members could afford individual litigation against Sitel, it would be unduly burdensome to the judicial system.

138. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

139. The questions of law and fact common to each of the Pennsylvania Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.    Whether the Pennsylvania Class members were paid wages at the rates required by Pennsylvania's wage-and-hour laws;

    b.    Whether Sitel's failure to pay wages at the rates required by law violated Pennsylvania's wage and hour laws;

    c.    Whether the Pennsylvania Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of forty (40) in a workweek;

    d.    Whether Sitel's failure to pay overtime at the rates required by law violated Pennsylvania's wage and hour laws;

    e.    Whether Sitel failed to pay Pennsylvania Class Members their contractually agreed wages; and

- 15 -

f. Whether Sitel has any good faith defense to paying the contractually agreed wages.

140. Williams's claims are typical of the Pennsylvania Class members. Williams and the Pennsylvania Class members have all sustained damages arising out of Sitel's illegal and uniform employment policies.

141. Williams knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

142. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

**FIRST CAUSE OF ACTION—VIOLATIONS OF THE FLSA AS TO WILLIAMS, DAVIS, AND THE FLSA COLLECTIVE**

143. Williams and Davis incorporate all other allegations.

144. By failing to pay Williams, Davis, and the FLSA Collective members overtime at 1.5 times their regular rates when the payments were due, Sitel violated the FLSA. 29 U.S.C. § 207(a).

145. Sitel oweowes Williams, Davis, and the FLSA Collective members overtime for all hours worked in excess of forty (40) in a workweek, at a rate of at least 1.5 times their regular rates of pay.

146. Likewise, Sitel owes Williams, Davis, and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including forty (40) each week in which they worked over forty (40) hours in the week, but were not paid in full for all hours.

147. Sitel knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Williams, Davis, and the FLSA Collective members overtime compensation on time and in full.

148.    Because Sitel knew, or showed reckless disregard for whether, their pay practices violated the FLSA, Sitel owe these wages for at least the past three (3) years.

149.    Sitel's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

150.    Because Sitel's decision not to pay overtime was not made in good faith, Sitel also owes Williams and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

151.    Accordingly, Williams and the FLSA Collective members are entitled to their full overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages, attorneys' fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE PMWA AS TO WILLIAMS AND THE PENNSYLVANIA CLASS

152.    Williams and Davis incorporate all allegations in Paragraphs 1 to 142.

153.    The conduct alleged in this Complaint violates the PMWA.

154.    Sitel was and is an "employer" within the meaning of the PMWA.

155.    At all relevant times, Sitel employed Williams and the other Pennsylvania Class members as "employees" within the meaning of the PMWA.

156.    The PMWA requires an employer like Sitel to pay overtime to all non-exempt employees.

157.    Williams and the other Pennsylvania Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

158.    Within the applicable limitations period, Sitel had a policy and practice of failing to pay proper overtime to the Pennsylvania Class Members for their hours worked in excess of forty (40) hours per week.

159.    As a result of Sitel's failure to pay proper overtime on time and in full to Williams and the Pennsylvania Class Members for work performed in excess of forty (40) hours in a workweek, Sitel violated the PMWA.

160.    Williams and the Pennsylvania Class Members are entitled to recover their unpaid wages, liquidated damages, attorneys' fees, costs, penalties, and all other legal and equitable relief provided under the PMWA.

### THIRD CAUSE OF ACTION—VIOLATIONS OF THE WPCL
#### AS TO WILLIAMS AND THE PENNSYLVANIA CLASS

161.    Williams and Davis incorporate all allegations in Paragraphs 1 to 142.

162.    The conduct alleged in this Complaint violates the WPCL.

163.    Sitel was and is an "employer" within the meaning of the WPCL.

164.    At all relevant times, Sitel employed Williams and the other Pennsylvania Class Members as "employees" within the meaning of the WPCL.

165.    The WPCL requires an employer like Sitel to pay wages to its employees on their regularly scheduled paydays.

166.    Williams and the Pennsylvania Class Members had oral or written contracts with Sitel.

167.    Whether the contractual agreements of Williams and the Pennsylvania Class Members were formal contracts, collective bargaining agreements, or oral, does not alter Sitel's obligations under the WPCL.

- 18 -

168.    Williams and the Pennsylvania Class Members' status as at-will employees or otherwise is irrelevant to whether they had an enforceable contract for wages with Sitel under the WPCL.

169.    Williams and the Pennsylvania Class Members had regularly scheduled paydays with Sitel.

170.    Sitel failed to pay Williams and the Pennsylvania Class Members their contractually agreed wages on their regularly scheduled paydays.

171.    Sitel had no good faith basis for its failure to pay contractually agreed wages to Williams and the Pennsylvania Class Members.

172.    As a result of Sitel's failure to pay agreed wages to Williams and the Pennsylvania Class Members on their regularly scheduled paydays, Williams and the Pennsyvlania Class Members are entitled to recover unpaid wages and fringe benefits. WPCL, 43 Pa. Stat. Ann. § 260.10.

173.    Because Sitel failed to pay wages to Williams and the Pennsylvania Class Membes without any good faith basis, Williams and the Pennsyvlania Class Members are entitled to recover liquidated damages as provided for by the WPCL. WPCL, 43 Pa. Stat. Ann. § 260.10.

174.    Williams and the Pennsylvania Class Members are also entitled to attorneys' fees, costs, penalties, and all other legal and equitable relief provided under the WPCL. WPCL, 43 Pa. Stat. Ann. § 260.10.

**RELIEF SOUGHT**

Williams and Davis pray for judgment against Sitel as follows:

      a.      For an order certifying a collective action for the FLSA claims;

      b.      For an order certifying a class action for the Pennsylvania law claims;

c.      For an order finding Sitel liable for violations of state and federal wage laws with respect to Williams, Davis, and all FLSA Collective and Pennsylvania Class members covered by this case;

d.      For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Williams, Davis, and all FLSA Collective members covered by this case;

e.      For a judgment awarding all unpaid wages, fringe benefits, liquidated damages, and penalties, to Williams and all Pennsylvania Class members covered by this case;

f.      For an equitable accounting and restitution of wages due to Williams, Davis, and all FLSA Collective and Pennsylvania Class members members covered by this case;

g.      For a judgment awarding costs of this action to Williams, Davis, and all FLSA Collective and Pennsylvania Class members covered by this case;

h.      For a judgment awarding attorneys' fees to Williams, Davis, and all FLSA Collective and Pennsylvania Class members covered by this case;

i.      For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Williams, Davis, and all FLSA Collective and Pennsylvania Class members covered by this case; and

j.      For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**/s/ Andrew R. Frisch**
Andrew R. Frisch, Esq.
FBN 27777
**MORGAN & MORGAN, P.A.**
8185 Peters Road
4th Floor
Plantation, FL 33324
Telephone:    (954) WORKERS
Facsimile:    (954) 327-3013
Email: afrisch@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*admitted pro hac vice*)
**PARMET PC**

3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiffs**

**JURY DEMAND**

Plaintiffs demand a trial by jury.

**/s/ Andrew R. Frisch**
Andrew R. Frisch, Esq.